FILED
CLERK, U.S. DISTRICT COURT

JUN 1 5 2016

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    September 2015 Grand Jury

11   UNITED STATES OF AMERICA,          CR No. 15-315(B)-JGB

12           Plaintiff,                 S E C O N D
                                        S U P E R S E D I N G
13           v.                         I N D I C T M E N T

14   DAVID GARCIA HERRERA,              [18 U.S.C. § 1343: Wire Fraud; 18
                                        U.S.C. § 1349: Conspiracy to
15           Defendant.                 Commit Wire Fraud; 18 U.S.C
                                        § 1542: False Statement in
16                                      Passport Application; 18 U.S.C.
                                        § 2(a): Aiding and Abetting; 18
17                                      U.S.C. §§ 981, 982; 28 U.S.C.
                                        § 2461(c): Criminal Forfeiture]
18

19        The Grand Jury charges:

20                  INTRODUCTORY ALLEGATION

21        At all times relevant to this Second Superseding Indictment:

22        1.   Defendant DAVID GARCIA HERRERA formerly served as a special

23   agent for the Drug Enforcement Administration, and as a former

24   special agent, was issued a retired credential identifying him as a

25   former special agent.

26

27

28

COUNT ONE

[18 U.S.C. § 1349]

A.   THE OBJECT OF THE CONSPIRACY

2.   Beginning on a date unknown to the Grand Jury, but no earlier than in or about April 2009, and continuing through in or about September 2012, in Riverside County, within the Central District of California, and elsewhere, defendant DAVID GARCIA HERRERA ("HERRERA") and co-conspirator Jerry Arthur Whittington ("Whittington"), and others known and unknown to the Grand Jury, combined, conspired, and agreed to knowingly and intentionally commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.   THE MANNER AND MEANS OF THE CONSPIRACY

3.   The object of the conspiracy was carried out, and to be carried out, in substance as follows:

a.   Co-conspirator Whittington would befriend victim C.V. and would hold himself out to be a successful attorney who could help victim C.V. recover his losses in investments in two companies, Pacific Property Assets ("PPA") and Medical Capital Corporation ("MCC").

b.   Co-conspirator Whittington and defendant HERRERA would make false promises and statements, as well as material omissions, to induce victim C.V. to believe that defendant HERRERA was a then-active federal agent and a special agent for the Federal Bureau of Investigation ("FBI"), and could assist victim C.V. in recovering his losses in investments in PPA and MCC.

c.   Co-conspirator Whittington and defendant HERRERA would make false promises and statements, as well as material omissions, to

1   induce victim C.V. to retain co-conspirator Whittington and defendant

2   HERRERA to recover the monies victim C.V. lost in investments in PPA

3   and MCC.

4           d.    Co-conspirator Whittington would tell victim C.V. that

5   co-conspirator Whittington and defendant HERRERA were able to seize

6   and liquidate real properties, cars, and other assets from PPA and

7   MCC but that victim C.V. needed to send co-conspirator Whittington

8   and defendant HERRERA money so that they could "post bonds" that were

9   required to seize the assets.

10          e.    Co-conspirator Whittington would represent to victim

11  C.V. that co-conspirator Whittington had won a total judgment of $4

12  million from PPA and MCC for victim C.V.

13          f.    Co-conspirator Whittington would tell victim C.V. that

14  representatives from PPA and MCC were very angry at victim C.V.

15  because co-conspirator Whittington had been able to recoup such a

16  large amount of money for victim C.V.

17          g.    Co-conspirator Whittington would advise victim C.V.

18  that in order to avoid other victims and representatives from PPA and

19  MCC confronting victim C.V. and serving victim C.V. with papers, that

20  victim C.V. should leave the country for a while.  Co-conspirator

21  Whittington would assist victim C.V. in arranging victim C.V.'s

22  travel plans to Europe in approximately June 2010.  Co-conspirator

23  Whittington would insist in staying in victim C.V.'s home during

24  victim C.V.'s absence, for the purported purpose of confronting any

25  representatives from PPA and/or MCC who would purportedly try to

26  harass victim C.V.

27          h.    Co-conspirator Whittington would not apply any of

28  victim C.V.'s monies towards recouping victim C.V.'s lost investments

1  as he had represented and promised to do, and instead, each time
2  victim C.V. sent monies, co-conspirator Whittington would take
3  possession of victim C.V.'s monies and spend the monies on his own
4  personal expenses, or on payments to other victims in his schemes.
5          i.   By devising, executing, and participating in the above
6  scheme, co-conspirator Whittington and defendant HERRERA would
7  fraudulently induce victim C.V. to distribute to co-conspirator
8  Whittington approximately $290,000.
9  C.   OVERT ACTS
10         4.   In furtherance of the conspiracy and to accomplish its
11 object, on or about the following dates, defendant HERRERA and co-
12 conspirator Whittington, together with others known and unknown to
13 the Grand Jury, committed and willfully caused others to commit the
14 following overt acts, among others, in Riverside County, within the
15 Central District of California, and elsewhere:
16         Overt Act No. 1:   On or about May 13, 2009, defendant HERRERA
17 used Merlin, an online pay investigative research database ("Merlin
18 database"), to obtain information related to PPA Holdings LLC.
19         Overt Act No. 2:   On or about May 13, 2009, defendant HERRERA
20 caused the Merlin database to be accessed in order to obtain
21 information related to Pacific Property Assets LLC.
22         Overt Act No. 3:   On or about May 13, 2009, defendant HERRERA
23 made a telephone call from (xxx) xxx-0600 to co-conspirator
24 Whittington at (xxx) xxx-0620.
25         Overt Act No. 4:   On or about May 13, 2009, co-conspirator
26 Whittington made a telephone call from (xxx) xxx-0620 to defendant
27 HERRERA at (xxx) xxx-0600.
28

**Overt Act No. 5:**   On or about September 11, 2009, co-conspirator Whittington caused a wire to be sent in the amount of $28,960 from co-conspirator Whittington's Bank of America account number xxxx-0408 to victim C.V.'s US Bank account number xxxx-2452.

**Overt Act No. 6:**   On or about October 26, 2009, co-conspirator Whittington caused a wire transfer to be sent in the amount of approximately $100,000 from victim C.V.'s First Citizens Bank account xxxx-8788 to the Bank of America account number xxxx-0408 of co-conspirator Whittington.

**Overt Act No. 7:**   On or about June 5, 2010, co-conspirator Whittington made an international telephone call from (xxx) xxx-0620 in California to victim C.V. in Barcelona, Spain at (xxx) xxx-x3000.

**Overt Act No. 8:**   On or about August 2, 2010, co-conspirator Whittington caused a wire to be sent in the amount of $5,000 from co-conspirator Whittington's Bank of America account number xxxx-6825 to victim C.V.'s Bank of America account number xxxx-3534.

**Overt Act No. 9:**   In or around October 2010, co-conspirator Whittington and defendant HERRERA met with victim C.V. and defendant HERRERA displayed a law enforcement badge to victim C.V. and victim C.V.'s wife, O.V.

**Overt Act No. 10:**   In or around October 2010, co-conspirator Whittington and defendant HERRERA met with victim C.V. to show victim C.V. documents in order to lead victim C.V. to believe that progress was being made to recoup victim C.V.'s investment monies.

**Overt Act No. 11:**   On or about October 5, 2010, co-conspirator Whittington caused a wire to be sent in the amount of $5,000 from co-conspirator Whittington's Bank of America account xxxx-6825 to victim C.V.'s Bank of America account number xxxx-3534.

5

<u>Overt Act No. 12:</u>   On or about October 28, 2010, co-conspirator Whittington caused a wire to be sent in the amount of $5,000 from co-conspirator Whittington's Bank of America account number xxxx-6825 to victim C.V.'s Bank of America account number xxxx-3534.

COUNT TWO

[18 U.S.C. §§ 1343, 2(a)]

5.   Paragraphs 3 and 4 of this Second Superseding Indictment are re-alleged and incorporated herein by reference, as if set forth in full.

A.   THE SCHEME TO DEFRAUD

6.   Beginning in or about April 2009, and continuing to in or about September 2012, in Riverside County, within the Central District of California, and elsewhere, defendant DAVID GARCIA HERRERA ("HERRERA"), together with co-schemer Jerry Arthur Whittington ("Whittington") and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim C.V. as to material matters, and to obtain money and property from victim C.V. by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

7.   The scheme to defraud operated, in substance, as described in paragraph 3 above.

B.   USE OF INTERSTATE WIRE COMMUNICATIONS

8.   On or about June 5, 2010, in Riverside County, within the Central District of California, and elsewhere, defendant HERRERA and co-schemer Whittington, aiding and abetting each other, for the purpose of executing and attempting to execute the above-described scheme to defraud, made and caused to be made an international telephone call at approximately 3:56 p.m. PDT from (xxx) xxx-0620 to victim C.V. at (xxx) xxx-x3000, by means of wire communication in interstate and foreign commerce.

COUNT THREE

[18 U.S.C. § 1349]

9.    Paragraph 1 of this Second Superseding Indictment is re-alleged and incorporated herein by reference, as if set forth in full.

A.    THE OBJECT OF THE CONSPIRACY

10.    Beginning on a date unknown to the Grand Jury, but no later than in or around January 2011, and continuing to in or around March 2011, in Riverside County, within the Central District of California, and elsewhere, defendant DAVID GARCIA HERRERA ("HERRERA") and co-conspirator Jerry Arthur Whittington ("Whittington"), and others known and unknown to the Grand Jury, combined, conspired, and agreed to knowingly and intentionally commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.    THE MANNER AND MEANS OF THE CONSPIRACY

11.    The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

        a.    Co-conspirator Whittington would represent to victim R.S. that co-conspirator Whittington was an attorney.

        b.    Co-conspirator Whittington and defendant HERRERA would make false promises and statements, as well as material omissions, to induce victim R.S. to believe that defendant HERRERA was a then-active law enforcement officer and could use that experience and position to assist victim R.S. in obtaining immigration benefits for victim R.S.'s wife, victim M.S.

        c.    Co-conspirator Whittington and defendant HERRERA would represent to victim R.S. that co-conspirator Whittington and

1  defendant HERRERA would assist victim R.S. with the immigration
2  issues concerning his wife, victim M.S.

3          d.   Defendant HERRERA would vouch for co-conspirator
4  Whittington in front of victim R.S. to assist co-conspirator
5  Whittington in convincing victim R.S. that co-conspirator Whittington
6  was a lawyer and a former federal prosecutor.

7          e.   Co-conspirator Whittington and defendant HERRERA would
8  make false promises and statements, as well as material omissions, to
9  induce victim R.S. to retain co-conspirator Whittington as an
10 attorney to obtain immigration benefits for victim M.S.

11         f.   Based on co-conspirator Whittington and defendant
12 HERRERA's false promises and statements, and material omissions,
13 victim R.S. would pay money to co-conspirator Whittington to retain
14 co-conspirator Whittington as an attorney, and to defendant HERRERA
15 to assist with immigration issues concerning victim M.S.

16         g.   Co-conspirator Whittington would conceal from victim
17 R.S. that his monies had not been used for immigration issues, but
18 instead spent by co-conspirator Whittington for co-conspirator
19 Whittington's own personal expenditures.

20         h.   By devising, executing, and participating in the above
21 scheme, co-conspirator Whittington and defendant HERRERA induced and
22 attempted to induce victim R.S. to distribute to co-conspirator
23 Whittington approximately $8,500.

24 C.   OVERT ACTS

25    12.   In furtherance of the conspiracy and to accomplish its
26 object, on or about the following dates, defendant HERRERA, together
27 with co-conspirator Whittington and others known and unknown to the
28 Grand Jury, committed and willfully caused others to commit the

following overt acts, among others, in Riverside County, within the
Central District of California, and elsewhere:

Overt Act No. 1:    On or about January 5, 2011, co-conspirator
Whittington and defendant HERRERA met with victim R.S., during which
meeting defendant HERRERA displayed a law enforcement badge to victim
R.S., and co-conspirator Whittington and defendant HERRERA induced
victim R.S. to believe that defendant HERRERA was a then-active law
enforcement officer, and affirmed that they would help victim R.S.
with victim M.S.'s immigration issues.

Overt Act No. 2:    On or about January 7, 2011, co-conspirator
Whittington received a wire transfer in the amount of $5,500 from
victim R.S.'s Bank of America account number xxxx-9047 into co-
conspirator Whittington's Bank of America account number xxxx-6825.

Overt Act No. 3:    On or about January 13, 2011, co-conspirator
Whittington received a wire transfer in the amount of $3,000 from
victim R.S.'s Bank of America account number xxxx-9047 into co-
conspirator Whittington's Bank of America account number xxxx-6825.

COUNTS FOUR THROUGH EIGHT

[18 U.S.C. §§ 1343, 2(a)]

13.  Paragraphs 1, 11, and 12 of this Second Superseding Indictment are re-alleged and incorporated herein by reference, as if set forth in full.

A.  THE SCHEME TO DEFRAUD

14.  Beginning on a date unknown to the Grand Jury, but no later than in or around January 2011, and continuing to in or around March 2011, in Riverside County, within the Central District of California, and elsewhere, defendant DAVID GARCIA HERRERA ("HERRERA"), together with co-schemer Jerry Arthur Whittington ("Whittington") and others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victim R.S. as to material matters, and to obtain money and property from victim R.S. by means of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

15.  The scheme to defraud operated, in substance, as described in paragraph 11 above.

B.  USE OF INTERSTATE WIRE COMMUNICATIONS

16.  On or about the dates set forth below, in Riverside County, within the Central District of California, and elsewhere, defendant HERRERA and co-schemer Whittington, for the purpose of executing and attempting to execute the above-described scheme to defraud, transmitted and caused the transmission of, and aided and abetted the

///

///

transmission of the following items by means of wire communications in interstate and foreign commerce:

| COUNT | DATE | USE OF WIRE |
|-------|------|-------------|
| FOUR | January 7, 2011 | ATM withdrawal in the amount of $60.00 from co-schemer Whittington's Bank of America account number xxxx-6825 |
| FIVE | January 7, 2011 | Debit card transaction in the amount of $108.37 from co-schemer Whittington's Bank of America account number xxxx-6825 |
| SIX | January 7, 2011 | Debit card transaction in the amount of $121.92 from co-schemer Whittington's Bank of America account number xxxx-6825 |
| SEVEN | January 7, 2011 | Debit card transaction in the amount of $607.20 from co-schemer Whittington's Bank of America account number xxxx-6825 |
| EIGHT | January 14, 2011 | Debit card transaction in the amount of $167.10 from co-schemer Whittington's Bank of America account number xxxx-6825 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNT NINE

[18 U.S.C. §§ 1542, 2]

17.  On or about October 22, 2010, in Los Angeles County, within the Central District of California, defendant DAVID GARCIA HERRERA ("HERRERA"), together with Jerry Arthur Whittington ("Whittington") and others known and unknown to the Grand Jury, aiding and abetting each other, willfully and knowingly made a false statement in an application for a United States passport with intent to induce and secure for the use of Whittington the issuance of a passport under the authority of the United States, contrary to the laws regulating the issuance of such passports and the rules prescribed pursuant to such laws, in that, in such application executed by Whittington at the Los Angeles Federal Building, California, defendant HERRERA stated that he had been a personal friend of Whittington since 2003 and had known Whittington for seven years, whereas, in truth and in fact, as defendant HERRERA and Whittington then knew, defendant HERRERA had not known and had not been a personal friend of Whittington since 2003.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.     Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given to defendant DAVID GARCIA HERRERA ("HERRERA") that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant HERRERA's conviction of any of the offenses charged in Counts One through Eight of this Second Superseding Indictment.

2.     Defendant HERRERA shall forfeit to the United States of America the following property:

       a.     All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any offense set forth in any of Counts One through Eight of this Second Superseding Indictment; and

       b.     A sum of money equal to the total value of the property described in subparagraph a.  For each of Counts One through Eight for which more than one defendant is found guilty, each such defendant shall be jointly and severally liable for the entire amount forfeited pursuant to that Count.

3.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States Code, Section 2461(c), defendant HERRERA shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of defendant HERRERA, the property described in the preceding paragraph, or any portion thereof (a) cannot be located

14

upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(6)(A)(i), (ii)(I)-(II) and 28 U.S.C. § 2461(c)]

4.   Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given to defendant DAVID GARCIA HERRERA ("HERRERA") that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 982(a)(6)(A)(i) and (ii)(I) and (II) and 28 U.S.C. § 2461(c), in the event of defendant HERRERA's conviction of the offense charged in Count Nine of this Second Superseding Indictment.

5.   Defendant HERRERA shall forfeit to the United States of America the following property:

a.   any conveyance, including any vessel, vehicle, or aircraft used in the commission of the offense;

b.   any property, real or personal, that is used to facilitate, or is intended to be used to facilitate, the commission of the offense;

c.   any property, real or personal, that constitutes or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense;

d.   a sum of money equal to the total value of the property described in subparagraph c.  Each such defendant shall be jointly and severally liable for the entire amount forfeited pursuant to Count Nine.

e.   any property, real or personal, that is used to facilitate, or is intended to be used to facilitate, the commission of the offense.

6.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b) and

16

Title 28, United States Code, Section 2461(c), defendant HERRERA

shall forfeit substitute property, up to the total value of the

property described in the preceding paragraph if, as the result of

any act or omission of defendant HERRERA, the property described in

the preceding paragraph, or any portion thereof (a) cannot be located

upon the exercise of due diligence; (b) has been transferred, sold to

or deposited with a third party; (c) has been placed beyond the

jurisdiction of the court; (d) has been substantially diminished in

value; or (e) has been commingled with other property that cannot be

divided without difficulty.

A TRUE BILL


_____ /s/ _____
Foreperson

EILEEN M. DECKER
United States Attorney


LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

JOSEPH B. WIDMAN
Assistant United States Attorney
Chief, Riverside Branch Office

JERRY C. YANG
Assistant United States Attorney
Deputy Chief, Riverside Branch
Office

PUNEET V. KAKKAR
Assistant United States Attorney
Riverside Branch Office